# United States Court of Appeals
## For the First Circuit

No. 20-1812

UNITED STATES OF AMERICA,

Appellee,

v.

ORLANDO MIGUEL MARTÍNEZ-RAMOS,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Aida M. Delgado-Colón, U.S. District Judge]

Before

Barron, Chief Judge,
Kayatta, and Aframe, Circuit Judges.

Rick Nemcik-Cruz, with whom Andrés González Berdecía were on brief, for the Appellant.

Gregory B. Conner, Assistant United States Attorney, with whom Mariana E. Bauzá-Almonte, Assistant United States Attorney, Chief, Appellate Division, and W. Stephen Muldrow, United States Attorney, were on brief, for the Appellee.

May 30, 2025

**AFRAME**, **Circuit Judge**.  This is a sentencing appeal. Defendant-appellant Orlando Miguel Martínez-Ramos pleaded guilty to carjacking resulting in serious bodily injury and aiding and abetting the same, an offense carrying a twenty-five-year maximum sentence.  18 U.S.C. §§ 2119(2), 2.  The conviction stemmed from a home invasion, robbery, brutal physical attack, and car theft carried out by Martínez-Ramos and his half-brother, Eliezer Rosario-Ramos.  The victim, a 77-year-old woman, died nine days after the crime.  The advisory guideline sentencing range that Martínez-Ramos and the government thought applicable topped out at fourteen years, but Martínez-Ramos acknowledged in his plea agreement that an upward variance was warranted, at least in part because of "the victim's death within nine days of the carjacking and attack."

At sentencing, Martínez-Ramos argued for a fifteen-year sentence (a one-year upward variance) and the government asked for sixteen years (a two-year upward variance).  The district court did not accept either party's recommendation.  Instead, the court began the sentencing explanation by expressing agreement with the analysis in the presentence report, which proposed a higher advisory guideline range than was agreed to by the parties through application of the guidelines' first-degree-murder cross reference.  See U.S.S.G. §§ 2B3.1(c), 2A1.1.  Application of that cross reference would have yielded a recommended sentence of life

- 2 -

imprisonment, which would have been reduced to twenty-five years because of the applicable statutory maximum, 18 U.S.C. § 2119(2).

But although the district court thought that there were grounds for applying the first-degree murder cross reference, it did not do so. The court gave two reasons for this decision. First, notwithstanding its inclination to follow the presentence report's position, it wished to defer to the government's view that the causation evidence was insufficient to support applying the cross reference. Second, it believed that a twenty-five-year sentence would be "harsher than necessary," given Martínez-Ramos's youth. The court therefore imposed a sentence of eighteen years, explaining that a substantial upward variance from the guideline range was warranted because, among other things, the physical attack upon the victim contributed to her death. The sentence varied four years above the guideline range ultimately adopted by the court, and two and three years, respectively, above the variant sentences sought by the government and Martínez-Ramos.

Martínez-Ramos has filed two briefs challenging the lawfulness of this sentence. The first, filed by his original appellate counsel, argues that the district court's upward variance was substantively unreasonable because the record was "devoid of evidence to support the factual determination that there is any causal link between [Martínez-Ramos's] actions and the victim's death . . . ." The second, filed by newly appointed

- 3 -

counsel after Martínez-Ramos's original counsel withdrew, argues that the court applied too lenient a standard of causation in connecting Martínez-Ramos's actions to the victim's death. But in a Fed. R. App. P. 28(j) letter filed after oral argument, the newly appointed counsel commendably acknowledged that this latter argument is inconsistent with circuit precedent. See United States v. Heindenstrom, 946 F.3d 57, 64 (1st Cir. 2019). And counsel does not express an intention to challenge that precedent.

Consequently, the only remaining argument is that there was an absence of evidence to support the district court's conclusion that the physical attack upon the victim contributed to her death. The defendant labels the argument as contesting the substantive reasonableness of the sentence. But given that the argument challenges as unsupported the court's factual finding that the attack contributed to the victim's death, it is better understood as arguing that the court's judgment was tainted by a procedural error. See Gall v. United States, 552 U.S. 38, 51 (2007) (characterizing as procedural error the imposition of a sentence based on "clearly erroneous facts"). We review such factual determinations for clear error. Heindenstrom, 946 F.3d at 63 ("[W]e afford de novo review to the interpretation and application of the sentencing guidelines, evaluate the sentencing court's factfinding for clear error, and assay its judgment calls

- 4 -

for abuse of discretion." (citation and internal quotation marks omitted)).

The district court's finding was not clearly erroneous. First, we reiterate that Martínez-Ramos acknowledged in his plea agreement that an upward variance was warranted, at least in part, because of "the victim's death within nine days of the carjacking and attack." He therefore cannot now complain that the court reached the same conclusion. See, e.g., United States v. Ortiz-Torres, 449 F.3d 61, 74 (1st Cir. 2006) (holding that the district court did not clearly err in making a drug-quantity determination that was consistent with the drug quantity to which the defendant admitted in his plea agreement).

Second, Martínez-Ramos's contention that the record is "devoid of evidence" connecting the attack and the victim's subsequent death is inaccurate. While the autopsy lists four causes of death -- acute pulmonary edema, atherosclerotic and hypertensive cardiac disease, uncontrolled arterial hypertension, and uncontrolled diabetes mellitus -- it also states that "[f]acial and bodily trauma" were contributory factors. And it lists the manner of death as "[h]omicide," with a disclaimer stating that this was not a legal determination. Martínez-Ramos

introduced no contrary evidence demonstrating a reason for declining to take these expert conclusions at face value.[1]

Third, and finally, we cannot overlook the nature of the attack itself. Martínez-Ramos and his half-brother broke into the elderly victim's house at about 9:00 p.m. as she was watching television. They threw a cloth over her head, gagged her, and tied her hands before stealing several of her personal effects and her car. During the home invasion, one of the assailants repeatedly hit the victim in the face and head with a frying pan until she became unconscious. According to the autopsy, the victim suffered fractures of the orbital floor of her left eye, the right side of her nasal septum, and a finger on her left hand. She also suffered several other contusions, abrasions, lacerations, and bruises noted in the autopsy. She was hospitalized for three days following the attack. Perhaps the victim's ensuing death from, among other things, heart disease, uncontrolled hypertension, and diabetes would have occurred regardless of the trauma from the

---

[1] There was a colloquy between defense counsel and the district court at the sentencing hearing where defense counsel made arguments referencing alternative meanings of the term "contributory" in the medical sense. These arguments were mere argumentation, not evidence, and the record before the district court provided no evidentiary support for defense counsel's arguments. Defense counsel admitted as much at oral argument. See, e.g., United States v. Hammer, 3 F.3d 266, 273 (8th Cir. 1993)(observing that, in the sentencing context, "statements of counsel are not evidence").

attack.  But, on the record presented, the district court was not clearly wrong in concluding otherwise.

**<u>Affirmed</u>**.